# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| SUPER INTERCONNECT TECHNOLOGIES LLC,<br><br>           Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>           Defendant. | Civil Action No. 6:21-cv-259-ADA<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

## DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 2

    A. After EDTX Dismissal For Improper Venue, SIT Re-files In WDTX .................. 2

    B. The Relevant Witnesses And Evidence Are In The NDCA Or Elsewhere In California And The West Coast .......................................................................... 3

        1. Google's Evidence And Witnesses Are In The NDCA ............................. 3

        2. SIT's Evidence And Witnesses Are Also In California ............................. 4

        3. Key Third-Party Witnesses And Evidence Are In The NDCA Or Elsewhere In California And The West Coast .......................................... 5

III. LEGAL STANDARD ........................................................................................................... 6

IV. THE NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN THE WDTX .................................................................................................................................. 7

    A. SIT Could Have Brought This Action In The Northern District Of California ............................................................................................................... 7

    B. All Private Interest Factors Favor Transfer To The NDCA .................................. 7

        1. Cost Of Attendance For Willing Witnesses Heavily Favors Transfer To The NDCA ............................................................................ 7

        2. Relative Ease Of Access To Sources Of Proof Favors Transfer To The NDCA .................................................................................................. 9

        3. Availability Of Compulsory Process Favors Transfer To The NDCA ....................................................................................................... 11

        4. Other Practical Problems For An Easy, Expeditious, And Inexpensive Case Are Neutral ................................................................. 12

    C. The Public Interest Factors Also Weigh In Favor Of Transfer ........................... 12

        1. NDCA Has A Strong Local Interest In This Dispute .............................. 12

        2. The Median Time To Jury Trial Favors Transfer .................................... 13

        3. The Remaining Public Interest Factors Are Neutral ............................... 13

V. CONCLUSION .................................................................................................................... 13

<s>

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) .................................................................................. 11

*Harland Clarke Holdings Corp. v. Milken*,
  997 F. Supp. 2d 561 (W.D. Tex. 2014) .................................................................................. 13

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ............................................................................................... 9

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ............................................................................................... 7

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ..................................................................................... 7, 10, 13

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ............................................................................................... 2

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2008) ............................................................................................. 12

*In re HP Inc.*,
  826 F. App'x 899 (2020) ....................................................................................................... 11

*In re Tracfone Wireless, Inc.*,
  No. 2021-136, 2021 U.S. App. LEXIS 11388 (Fed. Cir. Apr. 20, 2021) ........................... 9, 12

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ................................................................................................... 8

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................................... 6, 7, 8, 10

*Moskowitz Family LLC v. Globus Med.*,
  No. 6:19-cv-00672, 2020 U.S. Dist. LEXIS 145438 (W.D. Tex. July 2, 2020) ............... 10, 12

*Parus Holdings Inc. v. LG Elecs. Inc.*,
  No. 6:19-CV-00432-ADA, 2020 U.S. Dist. LEXIS 150926 (W.D. Tex.
  Aug. 20, 2020) ........................................................................................................................ 9

*Polaris Innovations, Ltd. v. Dell, Inc.*,
  No. SA-16-CV-451-XR, 2016 U.S. Dist. LEXIS 167263 (W.D. Tex. Dec. 5,
  2016) ....................................................................................................................................... 7

</s>

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Super Interconnect Techs. LLC v. Google LLC*,
   No. 2:18-cv-00463 (E.D. Tex.) (consolidated with *Super Interconnect Techs.
   LLC v. Huawei Device Co., Ltd.*, No. 2:18-cv-00462 (E.D. Tex.)) ......................................... 2

**STATUTES**

28 U.S.C. § 1400(b) ....................................................................................................................... 7

28 U.S.C. § 1404(a) ................................................................................................................... 1, 6

**RULES**

Fed. R. Civ. P. 12(b)(3) .................................................................................................................. 2

Fed. R. Civ. P. 45(c)(1) ................................................................................................................ 11

**I.       INTRODUCTION**

Google LLC ("Google") requests transfer of this action to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a). This case is Plaintiff Super Interconnect Technologies LLC's ("SIT") second attempt to file an action against Google in the wrong district, with its prior case in the Eastern District of Texas ("EDTX") having recently been dismissed for improper venue. Its case does not belong here in the Western District of Texas ("WDTX") either. Because SIT's earlier-filed case in the EDTX had proceeded through fact discovery before being dismissed, there is no question regarding the relevant sources of proof or their location in the current action. As demonstrated by the record already developed in the EDTX action, the NDCA is a more convenient venue for virtually all witnesses, holds the majority of the sources of proof, and has subpoena power over the non-party witnesses.

Indeed, because fact discovery closed in the EDTX action and all the relevant party and non-party witnesses were deposed, there can be no dispute that nearly all those witnesses were located in or near the NDCA. For example, all Google personnel with knowledge about technical, financial, and marketing aspects of the accused Pixel smartphone products live and work in the NDCA. The NDCA is more convenient even for SIT's main witnesses, who are located in Orange County, California. The NDCA is also home to the two inventors deposed in the EDTX action, including the first inventor of all three asserted patents, as well as the original assignee of the patents, Silicon Image. The vast majority of the sources of proof are also either in the NDCA, at Google's headquarters, with the inventors, or with Lattice Semiconductor, which acquired Silicon Image. In addition, third-party Qualcomm—who designs the processors in Pixel products that implement the accused functionality—is headquartered in San Diego and has made its source code available for inspection in Los Angeles. In contrast, no relevant witnesses or evidence are in the WDTX.

1

Other factors also support transfer. The NDCA has subpoena power over not only the inventors, but also over Qualcomm. And being the location of Google's headquarters and the alleged inventions, the NDCA also has a strong interest in this litigation. In contrast, the WDTX has no interest, as neither Google, SIT, nor any third party has relevant ties to the WDTX.

The Court should therefore reject SIT's second bite at venue and grant transfer to the NDCA, a clearly more convenient forum.

## II. FACTUAL BACKGROUND

### A. After EDTX Dismissal For Improper Venue, SIT Re-files In WDTX

On November 2, 2018, SIT filed suit against Google in the EDTX (the "EDTX Action") with the same allegations as this lawsuit in this District. In particular, SIT asserts the same three Patents-in-Suit[1] against the same products, Google Pixel smartphones ("Pixel Products"). *Super Interconnect Techs. LLC v. Google LLC*, No. 2:18-cv-00463 (E.D. Tex.) (consolidated with *Super Interconnect Techs. LLC v. Huawei Device Co., Ltd.*, No. 2:18-cv-00462 (E.D. Tex.) for pretrial issues); Ex. 1[2] (EDTX -463 Dkt. 1) ¶¶ 15-17, 30-32, 44-46. Google filed a Rule 12(b)(3) motion to dismiss for improper venue, which the EDTX court denied. (Exs. 2, 3 (EDTX -463 Dkts. 21, 29).) On February 13, 2020, the Federal Circuit granted Google's petition for a writ of mandamus and ordered the EDTX to dismiss or transfer the case. *In re Google LLC*, 949 F.3d 1338, 1339 (Fed. Cir. 2020). Following that ruling, the EDTX stayed the case on February 18, 2020. (Ex. 4 (EDTX -462 Dkt. 102).)

Before the stay, the parties had (1) completed claim construction, with the EDTX court

---

[1] The three Patents-in-Suit are U.S. Patent Nos. 7,627,044 (Dkt. 1-2); 6,463,092 (Dkt. 1-3); and 7,158,593 (Dkt. 1-4).

[2] References to Ex. __ refer to exhibits attached to the Declaration of Mark Liang, filed concurrently herewith.

2

issuing a *Markman* order; (2) completed fact discovery, including depositions of party and non-party witnesses; and (3) proceeded partway through expert discovery, having served opening expert reports.  (Liang Decl. ¶¶ 6-7, Ex. 5 (EDTX -462 Dkt. 93).)

On March 12, 2021, in compliance with the Federal Circuit's order, the EDTX dismissed SIT's case.  (Ex. 6 (EDTX -462 Dkt. 111 at 4).)  The next business day, SIT filed a substantively identical complaint in this Court.  (Dkt. 1; Ex. 7 (Redline WDTX Complaint vs. EDTX FAC).)

### B.     The Relevant Witnesses And Evidence Are In The NDCA Or Elsewhere In California And The West Coast

SIT alleges that the Pixel Products infringe each Patent-in-Suit based on their purported compliance with the Universal Flash Storage ("UFS") and M-PHY technology standards.  (Dkt. 1 ¶¶ 12, 15-17, 28, 31-33, 44, 47-49.)  Non-party Qualcomm supplies the processor component in the Pixel Products that purportedly implements the accused UFS and M-PHY standards, and SIT sought and obtained discovery from Qualcomm in the EDTX Action.  (Exs. 8, 27 (SIT's Subpoena to Qualcomm, Email - Qualcomm's Source Code).)  As discovery in the EDTX Action confirmed, nearly all relevant witnesses and evidence regarding the Patents-in-Suit and the accused Pixel Products are in the NDCA or elsewhere on the West Coast.

#### 1.     Google's Evidence And Witnesses Are In The NDCA

Google is headquartered in the NDCA (Mountain View, California), and the majority of its U.S. workforce is in the NDCA.  (Golueke Decl. ¶ 3.)  Google witnesses with relevant technical, financial, and marketing knowledge about the accused Pixel Products are located in the NDCA and work out of Google's Mountain View headquarters.  (*Id.* ¶ 5.)  These witnesses are identified in the table below.  (*Id.* ¶¶ 6-11.)

| Google Witness | Job Title | Relevant Knowledge |
|---|---|---|
| Madhav Chitlu | Memory commodity and supply manager | Google's business relationship with memory and storage component suppliers for the accused Pixel Products |
| Michael Diamond | Hardware engineer, engineering manager for Pixel system integration team | Circuit board design and accused UFS interfaces in the Pixel Products |
| Nick Yoswa | Senior finance analyst | Financial data, statements, accounting, and records for the Pixel Products |
| Abhijit Ravi | Head of Pixel Product Marketing | Google's marketing, promotion, and business information regarding the accused Pixel Products |
| James Maccoun | Patent counsel | Google's patent license agreements and licensing practices |

All these witnesses were deposed as Google's Rule 30(b)(6) corporate witnesses in the EDTX Action. (Liang Decl. ¶¶ 11-16, Exs. 9-14 (Dep. Tr. Excerpts).) Another, sixth Google employee located in the NDCA, Harleen Juneja, was also deposed as a corporate witness; she has since left Google but remains in the NDCA. (Liang Decl. ¶¶ 17-18, Exs. 14-15 (Juneja Dep. Tr. Cover, LinkedIn Profile).)

As with the witnesses, all the relevant technical, financial, and marketing documents for the Pixel Products are located in the NDCA. (Golueke Decl. ¶ 13.) None of these documents are located in the WDTX. (*See id.* ¶¶ 12-13.) Although Google has offices in Austin, no Google employees in Austin—or anywhere else in Texas—are knowledgeable about technical, financial, or marketing issues for the accused Pixel Products. (*Id.*)

### 2. SIT's Evidence And Witnesses Are Also In California

Plaintiff SIT is a patent assertion entity with no ties to the WDTX. The Complaint's allegation that SIT is located in Austin (Dkt. 1 ¶ 1) is contradicted by SIT's most recently filed Texas Franchise Tax Public Report, which identifies SIT's address as in Frisco, Texas in the EDTX. (Ex. 16 (2020 SIT Public Report).) It was also contradicted by SIT's employees. Holly Hernandez, a SIT employee deposed in the EDTX Action, testified that SIT's only office was

4

located in Frisco, not in Austin.  (Ex. 17 (Hernandez Dep. Tr.) at 27:16-25, 28:1-3, 41:20-22.)

And SIT's CEO, Marc Booth, also confirmed that SIT's only office is in Frisco.  (Ex. 18 (Booth

Dep. Tr.) at 50:25-51:23.)

SIT has ▮▮▮▮▮▮▮▮▮▮ Mr. Booth, Ms. Hernandez, and Eric Lucas.  (*Id.* at 52:6-13.)  All three are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Ex. 19 (Lucas Dep. Tr.) at 33:5-9; Ex. 17 (Hernandez Dep. Tr.) at 42:2-4.)  Both Acacia entities are headquartered in Orange County, California.  (Dkt. 4; Ex. 20 (Acacia Res. Corp. 10-K); Ex. 18 (Booth Dep. Tr.) at 9-10.)  Acacia Research Group holds itself out as an "industry leader in patent licensing."  (Ex. 21 (Acacia Webpage).)

SIT's top executives, Mr. Booth (CEO) and Mr. Lucas (President), were designated by SIT in the EDTX Action as its corporate witnesses on most of Google's Rule 30(b)(6) topics, and both were deposed in in Orange County, California, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Ex. 22 (Email from SIT counsel - Deposition planning); Exs. 16-18 at 1.)

Mr. Booth is located in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 23 (Booth LinkedIn).) Besides acting as the CEO of SIT, he is the President and CEO of Acacia Research Group and the Chief IP Officer of Acacia Research Corporation.  (Ex. 18 (Booth Dep. Tr.) at 47:6-20; *see also* Ex. 20 (Acacia 10-K) at 6.)  Mr. Lucas is located in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 24 (Lucas LinkedIn).)  In addition to being the President of SIT, he is a Senior Vice President of Acacia Research Group.  (Ex. 19 (Lucas Dep. Tr.) at 26:18-25, 27:3-5, 18-19.)

### 3. Key Third-Party Witnesses And Evidence Are In The NDCA Or Elsewhere In California And The West Coast

Non-party supplier Qualcomm is a Delaware corporation, headquartered in San Diego, California.  (Exs. 25, 26 (Qualcomm Webpage, 10-K).)  Qualcomm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

▇▇▇▇▇▇▇▇ in San Diego.  (Ex. 10 (Diamond Dep. Tr.) at 163:12-14.)  During fact discovery in the EDTX Action, Qualcomm made its source code for the accused functionality available ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in Los Angeles, California.  (Ex. 27 (Email - Qualcomm's Source Code).)

Two of the inventors of the Patents-in-Suit, Gyudong Kim and Min-Kyu Kim, live in the NDCA and were deposed in the NDCA during the EDTX Action.  (Exs. 28-31 (LinkedIn profiles, Dep. Trs.).)  Both currently work at Analog Devices in the San Francisco Bay Area.  (*Id.*)  Gyudong Kim is the first-named inventor on all three Patents-in-Suit.  (Dkts. 1-2–1-4.)  The patents were originally assigned to Silicon Image, Inc., which was located in Sunnyvale, California, also in the NDCA, before it was acquired in 2015 by another company, Lattice Semiconductor ("Lattice").  (*Id.*; Ex. 32 (Garcia Decl.).)  Lattice is headquartered in Hillsboro, Oregon, and maintains a Development Center in San Jose, California.  (Ex. 33 (Lattice Webpage).)  In response to a subpoena in the EDTX Action, Lattice produced patent and invention-related documents, originating from Silicon Image.  (Exs. 32, 34 (Garcia Decl., Lattice Subpoena).)  Lattice also produced a declaration from Jaime Garcia, a former Silicon Image (and now Lattice) employee ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ authenticating and providing business record foundation for the documents.  (*Id.*)

### III. <u>LEGAL STANDARD</u>

To evaluate transfer under 28 U.S.C. § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  If so, courts weigh eight private and public factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious

6

and inexpensive[;] … [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (internal citations and quotation marks omitted).

## IV. THE NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN THE WDTX

### A. SIT Could Have Brought This Action In The Northern District Of California

As SIT admits, Google is headquartered in the NDCA. (Dkt. 1 ¶ 2.) Thus, SIT could have filed this lawsuit in the NDCA, where Google has a "regular and established place of business." 28 U.S.C. § 1400(b); *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

### B. All Private Interest Factors Favor Transfer To The NDCA

The private factors strongly favor transfer to the NDCA because, as fact discovery in the EDTX Action demonstrates, the NDCA is more convenient for the vast majority of witnesses of Google, SIT, and relevant third parties. Most relevant party and third-party evidence is similarly located in or near the NDCA, which has subpoena power over witnesses in California. In contrast, this case has no connection to the WDTX.

#### 1. Cost Of Attendance For Willing Witnesses Heavily Favors Transfer To The NDCA

The "single most important factor in [the] transfer analysis" is the convenience and cost for witnesses to travel and attend trial. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Courts "routinely afford more weight to the convenience and cost for *non-party* witnesses," but "also appropriately consider[] the cost of attendance of *all* willing witnesses." *Polaris Innovations, Ltd. v. Dell, Inc.*, No. SA-16-CV-451-XR, 2016 U.S. Dist. LEXIS 167263, at *22 (W.D. Tex. Dec. 5, 2016). Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100

miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*").

Here, the convenience of witnesses favors transfer to the NDCA. Google's employees with knowledge regarding technical, financial, and marketing aspects of the accused Pixel Products are all in the NDCA. (Golueke Decl. ¶¶ 5-11.) For all six Google employees who were deposed in the EDTX Action, "it is more convenient [] to testify at home" in the NDCA. *See Volkswagen II*, 545 F.3d at 317. There is no direct flight from the Bay Area to Waco. Traveling to Waco from the Bay Area requires at least five hours of flight time (including a layover in Dallas), not including time spent traveling to and from and waiting at the airport. (Liang Decl. ¶ 38, Ex. 35 (Flights SFO-ACT).) The long trips and overnight stays in Waco will lead to lost productivity and disruption to the witnesses' lives while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. By contrast, if this case were transferred to the NDCA, Google employees could readily travel back and forth between court and their homes—a "thirty minutes [to] an hour" commute—as compared to traveling "five or six hours one-way" to Waco. *See Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.").

Similarly, for ▮▮▮▮ SIT witnesses—who are Acacia executives located in Orange County—the NDCA is a closer and more convenient venue. There is no direct flight from Orange County (or Los Angeles) to Waco either. Traveling to Waco from Orange County (or Los Angeles) also requires at least five hours of flight time. (Liang Decl. ¶ 39, Ex. 36

8

(Flights SNA-ACT, LAX-ACT).)  Transferring the case to the NDCA would make the trial more convenient for SIT witnesses as well, due to many available one-hour-and-a-half nonstop flights from Orange County to the Bay Area.  (Liang Decl. ¶ 40, Ex. 37 (Flights SNA-SFO).)

The convenience of non-party witnesses also strongly favors transfer.  To the extent the inventors are willing to testify, they are at home in the NDCA.  *Supra* Section II.B.3.  And to the extent Qualcomm witnesses at its San Diego headquarters are willing witnesses, they would also find it more convenient to testify in the NDCA—a day trip involving short one-and-a-half-hour nonstop flights each way—compared to nearly five hours to reach Waco.  (Liang Decl. ¶¶ 41-42, Exs. 38-39 (Flights SAN-SFO, SAN-ACT).)

Meanwhile, there is no witness relevant to this case who resides in this District. (Golueke Decl. ¶ 12.)  And though SIT contends it is located in Austin, both its public filings and its employees' sworn testimony indicate otherwise.  *Supra* Section II.B.2.

Transfer is thus appropriate because "[a] substantial number of party witnesses, in addition to the inventor[s] . . . reside in or close to the Northern District of California."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010); *see also In re Tracfone Wireless, Inc.*, No. 2021-136, 2021 U.S. App. LEXIS 11388, at *3, 6 (Fed. Cir. Apr. 20, 2021) (finding that the convenience of witnesses favored transfer where "no party identified any witness residing in the Western District of Texas" and "several of [defendant]'s likely employees resid[ed] in the transferee venue").  This most important factor favors transfer.

### 2. Relative Ease Of Access To Sources Of Proof Favors Transfer To The NDCA

As this Court has noted, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Parus Holdings Inc. v. LG*

9

*Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 U.S. Dist. LEXIS 150926, at *10 (W.D. Tex. Aug. 20, 2020) (quoting *In re Genentech*, 566 F.3d at 1345).  As the Court has also noted, "under current Fifth Circuit precedent, the physical location of electronic documents does affect the outcome of this factor."  *Moskowitz Family LLC v. Globus Med.*, No. 6:19-cv-00672, 2020 U.S. Dist. LEXIS 145438, at *8 n.2 (W.D. Tex. July 2, 2020) (citing *Volkswagen II*, 545 F.3d at 316).

Here, the relevant sources of proof are in the NDCA or elsewhere on the West Coast, and therefore more easily accessed from the NDCA than the WDTX.  Google keeps technical, financial, marketing, and licensing documents relevant to the accused Pixel Products at its Mountain View headquarters, where the employees who create and maintain them are located. (Golueke Decl. ¶ 13.)  Google is not aware of any relevant documents kept in the WDTX concerning the research, development, marketing, or financials for the accused Pixel Products. (*Id.* ¶¶ 12-13.)

Key third-party documentary evidence is likewise located in the NDCA or elsewhere on the West Coast.  Two of the inventors, including the first-named inventor on all Patents-in-Suit, live and work in the NDCA.  *Supra* Section II.B.3.  Invention-related documents are at Lattice Semiconductor's Silicon Valley location in the NDCA or its Oregon headquarters, which is much closer to the NDCA than to the WDTX.  *See id.*  And Qualcomm produced its source code for physical inspection in Los Angeles, which is also more easily accessed from the NDCA than from the WDTX.  *Id.*

In contrast, no relevant sources of proof are in the WDTX.  SIT has not identified a single relevant document located in this District and does not appear to carry any business activities in this District.  *Supra* Section II.B.2.  

*See id*.  To the

extent that SIT has any relevant documentary evidence, it is also likely located in California. This factor thus favors transfer. *See In re HP Inc.*, 826 F. App'x 899, 902 (2020) (mandating transfer to the NDCA where most physical sources of proof were present in the NDCA, and none were in the EDTX).

### 3. Availability Of Compulsory Process Favors Transfer To The NDCA

"Transfer is strongly favored where, as here, a transferee district like the NDCA, "has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). A court may subpoena a person (a) within 100 miles of where a person resides or works, or (b) within the state when the witness is a party, an officer of the party, or would not incur substantial expense to attend trial. Fed. R. Civ. P. 45(c)(1).

Here, material third-party witnesses are located in California, within the subpoena power of the NDCA but not the WDTX. *Id*. Both inventors who were deposed, including the first inventor on all three Patents-in-Suit, are in the Bay Area and can be subpoenaed by the NDCA—but not by the WDTX. *See supra* Section II.B.3. Jaime Garcia, the Lattice employee, who provided a declaration regarding Lattice's third-party production, ▆▆▆▆▆ and thus under only the NDCA's subpoena power. *See id.* And employees at Qualcomm's San Diego headquarters are also under the NDCA—but not the WDTX—subpoena power. *See id*. Finally, because SIT is a subsidiary ▆▆▆▆▆ Acacia entities and employees in Orange County, California, even relevant information about SIT could require subpoenaing Acacia employees. Only the NDCA has subpoena power over those Acacia employees, while the WDTX does not.

In contrast, SIT has not identified—and Google is not aware of—any third-party witnesses in this District or Texas. This factor also weighs in favor of transfer.

      **4.**      **Other Practical Problems For An Easy, Expeditious, And Inexpensive Case Are Neutral**

This factor "considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer." *Moskowitz*, 2020 U.S. Dist. LEXIS 145438, at *14. This factor is neutral, as neither the WDTX nor the NDCA has experience with the Patents-in-Suit. So far in this case, no schedule has been entered, Google has not yet answered the Complaint, and no other motions have been filed except a concurrently filed motion to stay pending resolution of this transfer motion. Further, transfer to the NDCA is unlikely to cause delays, as this District has seen four times more patent cases filed here than in the NDCA in the last year. *See* Ex. 40 (DocketNav Statistics).

    **C.**    <u>**The Public Interest Factors Also Weigh In Favor Of Transfer**</u>

      **1.**      **NDCA Has A Strong Local Interest In This Dispute**

The NDCA has a strong local interest in this case, "because the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008). Google was founded and maintains its headquarters and largest offices in the NDCA, designed the accused Pixel Products there, and its personnel, documentary records, and ongoing activities relating to the Pixel Products are in the NDCA. *Supra* Section II.B.1. The strong connection to the accused instrumentalities of the NDCA means that it has a "far stronger local interest in the case than the Western District of Texas." *In re Tracfone*, 2021 U.S. App. LEXIS 11388, at *10. The NDCA's far stronger local interest is further bolstered by the facts that the asserted patents were also invented in the NDCA and the named inventors are located in the NDCA, as is their current employer Analog Devices and as was the original assignee, Silicon Image. *Supra* Section II.B.3; Dkts. 1-2–1-4.

By contrast, this District has no interest in protecting SIT's patents or any other interest in this case. SIT is not based in this District. And while SIT is putatively a Texas LLC based in Frisco, Texas, SIT is in fact controlled by Acacia entities based in Orange County, California. *See supra* Section II.B.2.

Because the NDCA has a strong local interest in this case, this factor favors transfer.

### 2. The Median Time To Jury Trial Favors Transfer

Based on statistics for the 2010–2020 period, the median time to jury trial in patent cases in the NDCA is 2.37 years, versus 2.62 years in the WDTX. (Ex. 41 (DocketNav Time to Trial).) While this Court has recently streamlined its patent litigation procedure, court speed "appears to be the most speculative" of the factors in the transfer analysis, and "should not alone outweigh all of [the] other factors." *In re Genentech*, 566 F.3d at 1347; *Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 587 (W.D. Tex. 2014) (transferring case despite finding this factor weighing slightly against transfer).

### 3. The Remaining Public Interest Factors Are Neutral

Familiarity with the governing law is neutral, as both the NDCA and the WDTX are well versed in patent law. And because there is no prospect for any conflict of laws, the last public interest factor is also neutral.

## V. CONCLUSION

The Court should reject SIT's second attempt at forum shopping and transfer the case to the NDCA, a clearly more convenient venue for this litigation.

Dated: April 27, 2021          Respectfully submitted,

By */s/ J. Mark Mann*
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
201 E. Howard Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Darin W. Snyder (*Pro Hac Vice* pending)
dsnyder@omm.com
David S. Almeling (*Pro Hac Vice* pending)
dalmeling@omm.com
Mark Liang (*Pro Hac Vice* pending)
mliang@omm.com
Sorin G. Zaharia (*Pro Hac Vice* pending)
szaharia@omm.com
Daniel Silverman (*Pro Hac Vice* pending)
dsilverman@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Tel: (415) 984-8700
Fax: (415) 984-8701

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF CONFERENCE

On April 22, pursuant to Local Rule CV-7, counsel Mark Liang for Defendant met and conferred with counsel Jeffrey Bragalone for Plaintiff, and counsel for Plaintiff indicated on April 26, 2021, that Plaintiff is opposed to the relief sought by this Motion.

Dated:  April 27, 2021	/s/ *Mark Liang*  
	**Mark Liang**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on April 27, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated:  April 27, 2021	/s/ *J. Mark Mann*  
	**J. Mark Mann**