**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

<table>
<tr><td>

**SUPER INTERCONNECT
TECHNOLOGIES,**
**Plaintiff,**

*v.*

**GOOGLE LLC,**
**Defendant.**

</td><td>

**6:21-CV-00259-ADA**

</td></tr>
</table>

<u>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER**</u>

Came for consideration on this date is an action for patent infringement allegedly committed by Defendant Google LLC ("Google"). Google moves to transfer the above case to the Northern District of California ("NDCA"). Pursuant to 28 U.S.C. § 1404(a). ECF No. 14. Google filed its motion on April 27, 2021. *Id.* Plaintiff Super Interconnect Technologies ("SIT") filed its Response on May 18, 2021, and Google filed a Reply on July 2, 2021. ECF Nos. 34 and 40, respectively.

The Court previously denied Google's Motion (the "Order"). ECF No. 48. However, shortly after entry of that Order, the Federal Circuit provided new and additional guidance regarding certain factors relevant to Google's Motion. Therefore, this Court promptly reviewed the law and analysis in its prior Order to amend any clear errors. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Google's Motion to Transfer.[1]

## I. BACKGROUND

Both Google and SIT manufacture telecommunication equipment. Google LLC is a subsidiary of Alphabet Inc. ECF No. 1 at 1. It is a limited liability company incorporated under

---

[1] This Amended Order **VACATES** and **SUPERSEDES** the Court's prior order, dated September 15, 2021. ECF No. 45.

the laws of Delaware, and its principal place of business is in Mountainview, California. *Id*. SIT is a Texas limited liability company, and its principal place of business is in Frisco, Texas. ECF No. 14 at 4.

On November 2, 2018, SIT filed suit in the Eastern District of Texas (EDTX) for patent infringement, asserting U.S. Patent Nos.7,627,044; 6,463,092; and 7,158,593 ("Patents-in-Suit") against Google. ECF No. 14 at 2. The parties then began pre-trial discovery. The parties completed claim construction, with the EDTX issuing a *Markman* order. The parties also completed fact discovery, including depositions of party and non-party witnesses, and partially completed expert discovery. ECF No. 14 at 3. Google later filed a motion to dismiss the case for improper venue, which the EDTX denied. ECF No. 14 at 2. On February 13, 2020, the Federal Circuit granted Google's petition for a writ of mandamus and ordered the EDTX to dismiss or transfer the case. *In re Google LLC*, 949 F.3d 1338, 1339 (Fed. Cir. 2020). On March 12, 2021, in compliance with the Federal Circuit's order, the EDTX dismissed SIT's case. ECF No. 1 at 3.

SIT then filed a substantively identical complaint with this Court for patent infringement on March 15, 2021. ECF No. 1 at 1. The parties then filed a Joint Motion Regarding Case Management and Discovery into Newly-Released Products which allows all written discovery responses, document production, and other evidence from the EDTX action to be used in the instant action as if it had been served, produced, or obtained in this case. ECF No. 34 at 2–3. The Court has also adopted the claim constructions from the EDTX action. ECF No. 34 at 3.

The Court previously denied Google's Motion, finding two factors weighing against transfer and six to be neutral. After that Order, the Federal Circuit provided additional guidance on the factors this Court should consider in analyzing a motion to transfer venue under § 1404(a). This Order incorporates the Federal Circuit's instruction into its analysis below.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation that existed at

the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *Id.* at 290.

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A.     Venue and Jurisdiction in the Transferor Forum

Neither party contests that venue is proper in the NDCA and that this case could have been brought there. Thus, the Court proceeds with its analysis of the private and public factors.

**B.      Private Interest Factors**

**1.      The "cost of attendance of willing witnesses" factor favors transfer.**

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *17 (W.D. Tex. Sep. 10, 2019). The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has rendered the 100-mile rule nugatory by holding that courts should not apply the rule "rigidly." In some cases, the Federal Circuit has nullified the 100-mile rule by holding that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). In other cases, it has neutered the 100-mile rule by holding that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). In other cases, the Federal Circuit has altogether disregarded the Fifth Circuit's 100-mile rule and its emphasis on distance, opting to rely only on hypothetical travel-time statistics. *See In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sep. 27, 2021).

*Party Witnesses*. The Federal Circuit has chastised this Court for according little weight to the convenience of party witnesses. The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's

wishes)." *In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *13 (Fed. Cir. Aug. 2, 2021). Yet, in a spate of recent opinions, the Federal Circuit backtracked, holding that convenience-to-the-witnesses factor is *not* attenuated at all when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. Sep. 24, 2021). That decision is out of step with decades of jurisprudence springing from courts in the Fifth Circuit and elsewhere. *See, e.g.*, *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) (according little weight to the convenience of party employee witnesses); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (same); 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial."). Still, this amended order will follow the guidance from the Federal Circuit and will not discount the relevance of party witnesses for the purposes of Google's Motion as it had previously done in the original order.

*Third-Party Witnesses*. The Federal Circuit has recently held that courts cannot wield the practical fact that only a few non-party witnesses will testify at trial to categorically ignore prior-art witnesses or give less weight to laundry lists of third-party witnesses. *In re Juniper Networks, Inc.*, 14 F.4th at 1319.

As a preliminary matter, it is important to note that a witness cannot be simultaneously willing and unwilling to testify. A willing witness does not need to be subpoenaed. Google therefore cannot double down by arguing the inventors of the Patents-in-Suit and Qualcomm employees under both the "convenience of willing witnesses" factor and the "compulsory process" for unwilling witnesses factor. As discussed below, this Court no longer requires the parties to identify which witnesses are unwilling to testify, but this Court will not allow parties to argue

witnesses under one factor that analyzes willing witnesses and another that analyzes unwilling witnesses. Because the inventors were already deposed, this Court will treat them as willing witnesses. Because the Qualcomm employees have not been identified as willing, this Court will treat them as unwilling witnesses and analyze them under the compulsory process factor. *In re Dish Network L.L.C.,* No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

Google contends that five of its employees with relevant knowledge of the Patents-in-Suit reside in the NDCA. ECF No. 14 at 8. All five were deposed as Google's Rule 30(b)(6) witnesses in the EDTX action. *Id.* Google argues that would significantly reduce time to travel, time spent away from work, and time spent away from the community. *Id.* As for non-party witnesses, Google states that one former Google employee, who was also deposed as a corporate witness, and two inventors of the Patents-in-Suit, Gyudong Kim and Min-Kyu Kim, all live in the NDCA. *Id.* Google also notes that no witnesses reside in the WDTX.

SIT identifies three witnesses by name that it intends to call at trial. First, SIT intends to call non-party witness Holly Hernandez. ECF No. 34 at 13. SIT states that Ms. Hernandez has intimate knowledge of SIT's services and corporate structure because she is the former Director and Senior Vice President of SIT. *Id.* Ms. Hernandez lives in Frisco, Texas, and stated that travel to the NDCA would be far less convenient and more expensive than travel to Waco. *Id.* Second, SIT identified two party witnesses that it intends to call at trial. SIT witnesses Eric Lucas and Marc Booth, both of whom live in Irvine, California, indicated that they were willing to travel to Waco and that it would be convenient. ECF No. 34 at 13–14. As president of SIT, Mr. Lucas has relevant

knowledge on the patent assignments, license agreements, priority dates, and damages. *Id.* As CEO of SIT, Mr. Booth has knowledge of the patent portfolio. *Id.* Both would have to fly and obtain lodging in the NDCA despite living in California. *Id.* Both also indicated that they regularly travel to Texas for work, which could arguably make the WDTX more convenient. *Id.* Google argues that even though Messrs. Booth and Lucas are willing to testify, that should be afforded little weight given this Court's decision in *InfoGation*. In that case, the Court indicated that "the willingness of [plaintiff's witness] to travel to Waco carries little weight since he still resides within the [transferee venue]." *InfoGation Corp. v. Google LLC*, No. 6:20-cv-00366-ADA, Dkt. 65 at 5 n.1 (W.D. Tex. Apr. 29, 2021). That case is distinguishable because although they reside in California, neither Mr. Booth nor Mr. Lucas reside in the transferee venue.

The arguments here point in both directions, but likely favor a transfer to the NDCA. Google argues that the NDCA would be more convenient for five of its party witnesses, while SIT argues the WDTX is convenient—though not necessarily more convenient than the NDCA—for two of its party witnesses. Of the non-party witnesses, Google identified three who reside in the NDCA. SIT identified one non-party witness who resides outside the WDTX but in Texas, thus closer to the transferor district.  Nevertheless, SIT has failed to show that any witnesses reside in the WDTX. Google has identified at least nine that reside in the NDCA. Although there is no magic number of how many witnesses must be in one district compared to the other, the evidence here points to the NDCA being more convenient for willing witnesses.

For those reasons, this Court finds that this factor favors transfer to the NDCA.

## 2.    The "availability of compulsory process" factor favors transfer.

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in

person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

In the Court's previous order, the analysis hinged on Google's failure to demonstrate that a witness was unwilling to testify at trial. This Court no longer approaches review of this factor the same way. *See In re Juniper Networks, Inc.*, 14 F.4th at 1321 (stating "[t]hat no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California"). The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re Dish Network L.L.C.,* No. 2021-182, 2021 WL 4911981, at *3; *see also In re Hulu*, 2021 U.S. App. LEXIS 22723, at *10 ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). *But see In re Apple*, 581 F. App'x 886, 891 (Fed. Cir. 2014) (Bryson, J., dissenting) (collecting cases where courts required the movant to show witnesses would be unwilling to travel to the transferor district). Thus, a party does not have to prove a witness is unwilling to testify, and when a party has failed to show that a witness is willing to testify, that witness will be presumed to be unwilling.

9

Google argues that material third-party witnesses reside in California under the NDCA's subpoena power. ECF No. 14. Google stated that non-party employees from Qualcomm's San Diego headquarters and Lattice employee Jamie Garcia are under the NDCA's subpoena power. *Id.* Google also contends that no third-party witnesses in this case reside in the WDTX or fall under the subpoena power of this Court. *Id.*   Google did not state that it would call any of its own witnesses to trial, nor that any of the witnesses are unwilling to testify in the current forum. But it argues that this Court should not discount third-party witnesses simply because they are not identified. ECF No. 40 at 3.

SIT argues that Google has not met its burden on this factor by not identifying witnesses that are unwilling to attend trial. Especially because this case is at such an advanced stage of litigation, SIT argues that Google must provide evidence that its witnesses will refuse to testify. Specifically, SIT first notes that Google has neither specified which Qualcomm employees it plans to use at trial, nor whether any employees have relevant knowledge for the suit. ECF No. 34 at 12. Second, SIT contends that Mr. Garcia, the Lattice employee, merely provided a business record declaration, and has no other testimony relevant for trial. *Id.*

The Court looks to the two groups of witnesses identified by Google. First are the Qualcomm employees who reside in San Diego. Qualcomm is relevant to this suit because it supplies the processor component in the accused products that purportedly implement the accused UFS and M-PHY standards. ECF No. 14 at 7. San Diego is over 100 miles outside of the NDCA, meaning that a court may subpoena them if they would not incur substantial expense. But Google has failed to argue that these Qualcomm employees would not incur substantial expense in testifying in the NDCA. It is therefore unclear whether those employees are within the subpoena power of the NDCA. Moreover, Google has failed to even identify which Qualcomm employees,

if any, it intends to call. Stating that a non-party company may have some employees who may have relevant testimony is entirely speculative. Given that this case is at such an advanced stage of litigation, Google's failure to show that these employees may be subpoenaed, and its failure to establish that any of these employees have relevant testimony makes this group of witnesses less important when evaluating this factor.

The final non-party witness identified by Google is Mr. Garcia, a Lattice Semiconductor employee. Mr. Garcia resides in San Jose and is subject to the subpoena power of the NDCA. ECF No. 14 at 6. Lattice acquired Silicon Image, Inc., who originally was assigned the Patents-in-Suit. *Id.* In a response to a subpoena, Lattice produced patent and invention-related documents for the EDTX action. *Id.* Mr. Garcia authenticated and provided the business record foundation for those documents. *Id.* Google does not explain why testimony from a successor to the original assignee of the patents would have relevant testimony. From the information he provided, Mr. Garcia is likely just a custodian of the records. It is unlikely that Mr. Garcia will provide any relevant testimony beyond that authentication of records, making the strength of his testimony of lesser importance to the trial.

The only non-party witnesses that Google has identified that will provide relevant, material testimony at trial are the former Google employee who was deposed and the inventors of the Patents-in-Suit, all of whom reside in the NDCA. But as explained above, those witnesses are irrelevant under this factor because Google argued they were willing witnesses. The only witnesses who are unwilling are either entirely unknown (Qualcomm employees) or are mere custodians of business records (Mr. Garcia). Nevertheless, Google has at least provided some shred of evidence that there are non-party witnesses who can be compelled to testify by the NDCA. By contrast, SIT has failed to identify *any* non-party witnesses who are subject to this Court's subpoena power.

For those reasons, this Court finds this factor weighs in favor of transfer.

### 3.   The "relative ease of access to sources of proof" factor favors transfer.

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *5. This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d 285, 288 (Fed. Cir. 2013); *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340. In *Radmax*, the Fifth Circuit held that, though the distance between two divisions was slight, because all the documents and physical evidence were in the transferor division, this factor favored transfer. 720 F.3d at 288.

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to

almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

Google asserts that nearly all of Google's relevant documents are located in the NDCA. ECF No. 14 at 3. SIT argues that because Google's relevant documents and other evidence are mostly electronic and therefore easily accessible from anybody with a computer and internet connection, this factor is neutral. ECF No. 34 at 10. Non-party Qualcomm's source code are the only non-electronic documents in the suit. These documents are stored in Qualcomm's facility in California; however, SIT claims that a copy of these documents is stored in a secure office in Dallas, Texas. ECF No. 34 at 10. The parties expect Google to produce supplemental financial discovery, but all previous document productions have been made electronically to SIT's outside counsel in Dallas. But "that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer." *In re Juniper Networks, Inc.*, 14 F.4th at 1321. In its original order, this Court had mistakenly considered the availability of documents in nearby Dallas when evaluating this factor. Instead, the Court looks to the relative access in the two competing forums. *Id.* The focus here is on sources of proof in the WDTX and the NDCA.

At first glance, because the Qualcomm source code and Google financial information are stored in the NDCA, this factor weighs in favor of transfer. This is bolstered by the fact that no sources of proof are in the WDTX. But the crucial point here is that the parties have already completed fact discovery. There is no need for reproduction of any documents because this Court already ordered the parties to reuse the discovery from the EDTX action. Still, the fact that Google expects to produce some supplemental financial discovery from its offices in the NDCA is likely enough to tilt this factor in favor of transfer.

For those reasons, the Court finds this factor to weigh slightly in favor transfer.

4.      The "practical problems" factor weighs against transfer.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289. The Federal Circuit has long recognized a "strong public policy favoring expeditious resolutions of litigation." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989).

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

Google argues that this factor is neutral. ECF No. 14 at 11. Because neither district has experience with the Patents-in-Suit, Google contends that this factor does not favor any district.

14

*Id.* Google also implies that transferring out of Waco and its active patent docket would make delay in the NDCA unlikely. *Id.*

In its Reply, SIT urges the Court to consider the proceedings in the EDTX action that preceded this case. ECF No. 34 at 6. Throughout the two years of litigation in the EDTX action, Google never filed a motion to transfer due to an inconvenient venue and never complained about litigating the case in Texas. SIT contends that transferring venues would cause delay and would further prejudice SIT. *Id.*

SIT is correct that significant discovery and litigation has already been completed in this case. Although Google is correct that at the time of its filing of this Motion that no schedule had been entered and it had not yet answered the complaint, Google ignores that the parties agreed to reuse the discovery from the EDTX action. What that means is that the confidential information produced by the parties and non-party Qualcomm, which was subject to protective orders in the EDTX, can now be used in this litigation. A transfer to the NDCA would not be subject to that agreement. Rather, the parties might not reach a similar agreement in the NDCA, which would uproot the two years spent litigating and producing documents in this case. Additionally, there is no guarantee that the NDCA would adopt the EDTX's claim construction rulings. The combination of completed discovery and claim construction means that a transfer to the NDCA could seriously impair the ability to get to trial easily, expeditiously, and inexpensively.

Of course, it is entirely possible that the NDCA would mimic this Court's approach in this case. It could just as easily accept the agreement to reuse discovery from the EDTX action. It could also just as easily accept the EDTX's claim construction rulings. But the uncertainty of whether an NDCA court would reuse those critical aspects of the EDTX litigation prevent this factor from being neutral.

For those reasons, this Court finds this factor weighs against transfer.

**C.    Public Interest Factors**

  **1.    The "court congestion" factor weighs against transfer.**

  The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

  Federal Circuit jurisprudence has muddled what facts are relevant to this factor. One recent opinion held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. Yet in a more recent opinion the Federal Circuit has stated that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, 14 F.4th at 1322. The Federal Circuit has not squared why cases per judgeship matter if, according to *Genentech*, time to trial is dispositive of this factor.

  Google uses statistics spanning the last decade to argue that the NDCA provides a faster median time to jury trial than the Western District of Texas. ECF No. 14 at 13. This argument fails for two reasons. First, the statistics cited by Google are seriously misleading. Since this Court's inception roughly three years ago, this Court has consistently brought patent cases to trial at an efficient rate. Recent data shows that "for patent cases since 2016, the average time to trial in NDCA was 34.1 months." *Demaray LLC v Samsung Electronics Co., et al.*, No. 6-20-CV-636-ADA, ECF No. 115 at 11 (W.D. Tex. Jul. 1, 2021). By contrast, this Court's Order Governing

Proceedings – Patent Case ("OGP") sets patent cases for trial at 52 weeks after *Markman* hearings. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, 2020 WL 6439178 (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial). Therefore, the time to trial for patent cases in the Waco Division is almost 12 months shorter on average than in the NDCA.

Second, the trial backlog in NDCA caused by courthouse closures due to the COVID-19 pandemic beginning in March 2020 would make the time to trial for patent cases, and all cases in general, even longer. Civil trials were temporarily suspended in NDCA due to COVID-19 at the time Google filed its motion. ECF No. 34 at 8. By contrast, this Court conducted its first patent jury trial during the COVID-19 pandemic in October 2020, and has since conducted at least nine jury trials, eight of which are patent jury trials. Taking these into consideration, the differences in average time to trial in this Court and the NDCA could be much longer than 12 months.

Due to the advanced nature of this litigation, and the parties' agreement to reuse discovery evidence from the EDTX action, trial is approaching. Transfer to the NDCA would only cause further unnecessary delay.

However, given that court congestion is considered to be "the most speculative" factor, the Court gives this factor lesser weight. *See In re Genentech, Inc.*, 566 F.3d at 1347 (merely noting that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors."). This language directly counters the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn*, 889 F.2d at 1080. And the Federal Circuit has recently acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).

For those reasons, the Court finds this factor weighs against transfer. But taking direction from the Federal Circuit, this Court gives this factor less weight.

## 2. The "local interests" factor is neutral.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit,

such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Google was founded and maintains its headquarters in Northern California. But it is a global corporation (incorporated in Delaware) whose business practices affect companies all over the world. The NDCA would certainly have an interest in this case because the cause of action "calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffmann-La Roche*, 587 F.3d at 1336.

But this district also has an interest in the disposition of this case. SIT is a Texas LLC that was founded in the WDTX and maintains a registered address here. ECF No. 34 at 15 n.3. Google argues that since the NDCA is home to the company personnel with relevant information as well as documentary evidence in this case, the NDCA has a "far stronger local interest in the case than the Western District of Texas." ECF No. 14 at 12. However, this argument understates the global reach of Google's products and in particular its connection to the state of Texas. Google also has an office in the Western District in Austin. ECF No. 34 at 15, Ex. I. Perhaps most notably, acts of infringement occurred in this district. As the Federal Circuit has recently instructed, the Court must look to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320. Because Google committed acts of infringement in the WDTX, this district has a localized interest.

For those reasons, the public interest factor is neutral.

### 3. The "familiarity of the forum with law-at-issue" factor is neutral.

The parties do not dispute that this factor is neutral and the Court agrees.

### 4.    The "conflict of laws" factor is neutral.

The parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs slightly in favor of transfer |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three of the eight factors are neutral. Two factors weigh against transfer, and three factors weigh in favor of transfer. Ordinarily, when the factors favoring and disfavoring transfer are roughly equal, this Court would not transfer the case because the facts would fail to show that the transferee venue is clearly more convenient. But an in-depth look at the analysis of the factors above shows that the NDCA is a clearly more convenient venue.

The two witness factors in this case show that the NDCA is clearly more convenient. Those witness factors alone would normally not be enough to tip the scale in favor of transfer, but this case is unique in that zero witnesses reside in the WDTX. By contrast, at least nine witnesses reside in the NDCA, with potentially more residing in other parts of California. That imbalance is substantial. Although this lawsuit is at an advanced stage of litigation, and a transfer to the NDCA could risk uprooting that progress, it is also entirely possible that the NDCA could reuse the

discovery and claim constructions that this Court adopted from the EDTX action. Google's Motion

to Transfer is therefore **GRANTED**.


SIGNED this 5th day of November, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE